1   James F. Valentine (SBN 149269)
    JValentine@perkinscoie.com
2   James C. Pistorino (SBN 226496)
    JPistorino@perkinscoie.com
3   Kenneth J. Halpern (SBN 187663)
    KHalpern@perkinscoie.com
4   PERKINS COIE LLP
    3150 Porter Drive
5   Palo Alto, CA  94304-1212
    Telephone:  650.838.4300
6   Facsimile:  650.838.4350

7   Attorneys for Defendant and Counterclaim-Plaintiff
    INTEL CORPORATION
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12  FUZZYSHARP TECHNOLOGIES
    INCORPORATED,                          Case No. 12-cv-4413 YGR
13
14                        Plaintiff,       **DATE:**    April 30, 2013
                                           **TIME:**    2:00 P.M.
15         v.                              **DEPT:**    Courtroom 5 – 2nd Floor

16  INTEL CORPORATION,                     Honorable Yvonne Gonzalez Rogers

17                        Defendant.

18
        **DEFENDANT INTEL'S NOTICE OF MOTION AND MOTION FOR JUDGMENT
19        ON THE PLEADINGS DISMISSING FUZZYSHARP'S CLAIMS
                  FOR LACK OF PATENT-ELIGIBILITY**
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     THE '047 AND '679 PATENTS BROADLY CLAIM MATHEMATICAL
        ALGORITHMS FOR SKIPPING PART OF THE "VISIBILITY
        CALCULATIONS" ALREADY USED IN 3D GRAPHICS ............................. 3

III.    THIS COURT PREVIOUSLY HELD THE CLAIMS PATENT-INELIGIBLE,
        THE FEDERAL CIRCUIT AGREED, AND ALL POLICY CONSIDERATIONS
        SUPPORT COMPLETING THE SECTION 101 ANALYSIS OF THE CLAIMS .......... 6

IV.     THE CLAIMS REMAIN PATENT-INELIGIBLE UNDER THE STANDARDS
        THE SUPREME COURT ANNOUNCED IN *BILSKI* AND *MAYO* ............................. 10

        A.      *Mayo* Holds that a Claim Is Not Patentable If It Merely Limits an Abstract
                Idea to a Field of Use or Merely Adds Conventional Post-Solution Activity ...... 10

        B.      The Claims at Issue Here Do Not Satisfy *Mayo's* Patent-Eligibility
                Standards ............................................................................................... 12

                1.      The Claims Are Patent-Ineligible Because They Claim an Abstract
                        Idea and Add Only an Instruction to "Apply It" in a Field of Use .......... 12

                2.      The Claims Are Also Patent-Ineligible Because They Add Only
                        Conventional Post-Solution Activity to the Abstract Formula ................. 16

                3.      Nothing in the Claims Not Previously Considered by the Federal
                        Circuit Changes the Analysis ................................................................ 18

        C.      The Court Need Not Await Claim Construction Because the Claims Fail to
                Satisfy *Mayo* Even Assuming that Fuzzysharp's Constructions Are Correct ....... 19

V.      CONCLUSION ................................................................................................ 20

DEFENDANT INTEL'S MOTION FOR JUDGMENT
ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

1

## TABLE OF AUTHORITIES

2

CASES

3

*Bancorp Servs. LLC v. Sun Life Assurance Co. of Canada,*
    687 F.3d 1266 (Fed. Cir. 2012).................................................................................. 8, 18, 20

4

5

*Bilski v. Kappos,*
    130 S. Ct. 3218 (2010) ....................................................................................................*passim*

6

*Cardpool, Inc. v. Plastic Jungle, Inc.,*
    2013 WL 245026 (N.D. Cal., Jan. 22, 2013) ............................................................. 8, 19, 20

7

*CyberFone Sys., LLC v. Cellco P'ship,*
    2012 WL 3528115 (D. Del., Aug. 16, 2012) .................................................................. 8, 20

8

9

*Cybersource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011)............................................................................................ 18

10

*Dealertrack, Inc. v. Huber,*
    657 F. Supp. 2d 1152 (C.D. Cal. 2009) ................................................................................ 6

11

12

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012)............................................................................................ 7

13

*Diamond v. Diehr,*
    450 U.S. 175 (1981)......................................................................................... 10, 11, 12

14

15

*Dworkin v. Hustler Magazine, Inc.,*
    867 F.2d 1188 (9th Cir. 1989)................................................................................................ 7

16

17

*Eakin Enters., Inc. v. Specialty Sales LLC,*
    2012 WL 2445154 (E.D. Cal., Jun. 26, 2012) ...................................................................... 8

18

19

*Eon-Net LP v. Flagstar Bancorp,*
    653 F.3d 1314 (Fed. Cir. 2011)............................................................................................ 9

20

*Fuzzysharp Techs., Inc. v. 3D Labs, Inc.,*
    2009 WL 4899215 (N.D. Cal. 2009)..............................................................................*passim*

21

22

*Fuzzysharp Techs., Inc. v. 3D Labs, Inc.,*
    447 Fed. Appx. 182 (Fed. Cir. 2011)..............................................................................*passim*

23

24

*Glory Licensing LLC v. Toys "R" Us, Inc.,*
    2011 WL 1870591 (D.N.J. May 16, 2011) .......................................................................... 8

25

*Gottschalk v. Benson,*
    409 U.S. 63 (1972).............................................................................................................. 11

26

27

28

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) ........................................................................... 6, 10

*Intri–Plex Techs., Inc. v. Crest Group, Inc.*,
   499 F.3d 1048 (9th Cir. 2007) ................................................................................. 8

*Io Group, Inc. v. Veoh Networks, Inc.*,
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ................................................................... 8

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   132 S. Ct. 1289 (2012) ................................................................................... *passim*

*Ohio Willow Wood Co. v. Thermo-Ply, Inc.*,
   629 F.3d 1374 (Fed. Cir. 2011) ............................................................................... 9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   2012 WL 3985118 (N.D. Cal., Sept. 11, 2012) ................................................. 8, 20

*Openwave Sys., Inc. v. Myriad France S.A.S.*,
   2011 WL 1832999 (N.D. Cal., May 13, 2011) ................................................... 7, 8

*Parallel Networks LLC v. Abercrombie & Fitch Co.*,
   704 F.3d 958 (Fed. Cir. 2013) ................................................................................. 9

*Parker v. Flook*,
   437 U.S. 584 (1978) ........................................................................................ *passim*

*Roche Palo Alto LLC v. Apotex, Inc.*,
   526 F. Supp. 2d 985 (N.D. Cal. 2007) ..................................................................... 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................................................. 7

*Stanley v. Trustees of Cal. State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ................................................................................. 7

*Wildtangent, Inc. v. Ultramercial*,
   657 F. 3d 1323 (Fed. Cir. 2011),
   *cert. denied*, 12 S. Ct. 2431 (U.S. May 21, 2012) ................................................. 20

**STATUTES**

35 U.S.C. § 101 .................................................................................................. 1, 7, 20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 7, 20

Fed. R. Civ. P. 12(c) ........................................................................................ 1, 7, 20

-iii-

1

**NOTICE OF MOTION**

2

**TO:**   **THE COURT, ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF
RECORD**

3

4          PLEASE TAKE NOTICE THAT on April 30, 2013, at 2:00 p.m., or as soon thereafter as

5      the matter may be heard, in Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland, California 94612

6      before the Honorable Yvonne Gonzalez Rogers, Defendant and Counterclaim-Plaintiff Intel

7      Corporation will, and hereby does, move the Court for an order dismissing this action with

8      prejudice on the ground that the asserted claims of U.S. Patent No. 6,618,047 ("the '047 patent")

9      (claims 1-6, 8-13, 15-17, 20, 21, 23-25, 27, 46, 47, 49, 51, 54, 55, 57-59, 61-65, and 67-68) and

10     of U.S. Patent No. 6,172,679 ("the '679 patent") (claims 1, 4, and 5) (the "Asserted Claims") are

11     not drawn to subject matter that is eligible for a patent.

12         This motion is made pursuant to Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101 on the grounds

13     that the Asserted Claims are not patent-eligible.  As this Court and the Federal Circuit have

14     already recognized, representative claims fail the "machine or transformation" test.  Moreover,

15     the Asserted Claims either claim an abstract idea and add nothing more than an instruction to

16     "apply it," or recite an abstract idea without requiring any application containing an "inventive

17     concept," or both.

18         The Motion is based upon this Notice, the accompanying Memorandum of Points and

19     Authorities, the accompanying Declaration of James F. Valentine and exhibits thereto, any reply

20     memorandum, the pleadings and files in this action, and such other matters as may be presented at

21     or before the hearing.

22     Dated:  March 15, 2013                    By:  _____*/s/ Kenneth J. Halpern*_____

23                                                      Kenneth J. Halpern

24                                                 Attorneys for Defendant and
                                                   Counterclaim-Plaintiff
25                                                 INTEL CORPORATION

26

27

28

DEFENDANT INTEL'S MOTION FOR JUDGMENT
                                                ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Intel moves for judgment on the pleadings that the Asserted Claims of the '047 and '679 patents are invalid because they do not cover patent-eligible subject matter.  In Fuzzysharp's earlier lawsuit against 3D Labs, this Court held all of the claims asserted in that case to be unpatentably abstract under the then-prevailing "machine-or-transformation" test for patent-eligibility.  The Federal Circuit agreed with that analysis, but remanded for further consideration in light of the Supreme Court's decision in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010).  Fuzzysharp took advantage of the remand and settled that case before the Court could complete the patent-eligibility analysis, but it has subsequently sued Intel and other defendants on claims that are plainly invalid.  This is consistent with its longstanding pattern of filing suit on these patents and settling quickly, as it has done on eight previous occasions.  Fuzzysharp's claims are directed to nothing more than a method for skipping steps in a calculation, but it has avoided having them invalidated by allowing its litigations to progress only so far.  With this motion on the pleadings, Intel seeks to prevent Fuzzysharp from proceeding with this suit, and others, based on invalid claims.

The abstractness of the claims is manifest.  The purported invention is a mathematical formula for choosing which steps to omit from computations already in use, plus a direction to omit those steps.  It claims no new machine, no particular application of its formula, nor even a new type of calculation—just a mathematical principle for cutting out part of well-known computations.  That is why this Court held Fuzzysharp's claims patent-ineligible as drawn to "mathematical calculations and algorithms" with token computer elements that are not meaningfully limiting.  *Fuzzysharp Techs., Inc. v. 3D Labs, Inc.*, No. 07-cv-5948, 2009 WL 4899215, *5 & n.3 (N.D. Cal. 2009), *vacated*, 447 Fed. Appx. 182 (Fed. Cir. 2011) ("*3D Labs*").  The Court specifically recognized that the claims were "not tailored narrowly enough to encompass only a particular application of a fundamental principle rather than to pre-empt the principle itself," which is the policy concern at the heart of Section 101 of the Patent Act.  2009 WL 4899215, at *3.  The Federal Circuit agreed, 447 Fed. Appx. at 184-85, but remanded

1    because in the interim, the Supreme Court declared in *Bilski* that the "machine or transformation"

2    test is not the "sole test" for patent-eligibility even though it is "a useful and important clue" that

3    is reliable in most cases.  130 S. Ct. at 3230-31 (2010).  *Bilski* does not change the result here,

4    however.  Indeed, in a later case, *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,

5    132 S. Ct. 1289 (2012), the Supreme Court unanimously announced standards that reinforce the

6    correctness of this Court's ruling that Fuzzysharp's claims are invalid under Section 101.

7         Under *Mayo*, a claim must still be drawn to a "***particular application***" of an abstract idea

8    or law of nature.  *Id.* at 1299, 1302 (emphasis added).  A claim does not meet this standard if it

9    simply recites an abstract idea or law of nature along with an instruction to apply it in a particular

10   field of use.  *Id.* at 1297.  The only application language in Fuzzysharp's claims is exactly that

11   sort of instruction—a statement in the preamble that the "calculations" are performed in a field of

12   use such as "3-D graphics" or "the production of a multi-dimensional image."  Otherwise, the

13   patents claim the formula at the level of pure mathematics.  This does not satisfy *Mayo*.

14        Under *Mayo*, a claim is also unpatentable if, "putting the [abstract] formula to the side,

15   there [is] no 'inventive concept' in the claimed application of the formula," as when it adds only

16   "conventional or obvious" "post-solution activity."  *Id*. at 1299 (citing *Parker v. Flook*, 437 U.S.

17   584, 589, 590 (1978)).  After solution of the formula, Fuzzysharp's claims recite only steps that

18   would be performed even without the formula.  *Mayo* identified a similar claim, drawn to a

19   mathematical algorithm in an otherwise unchanged process, as the paradigm case of no

20   "'inventive concept.'"  *Id.* at 1299 (citing *Flook*, 437 U.S. at 594).

21        Failing either *Mayo* standard means the claims "too broadly preempt the use of" the

22   abstract principles that are the basic tools of scientific and technological work.  *Id.* at 1294, 1301.

23   The Asserted Claims fail both standards.  Moreover, because patent-eligibility is an issue of law,

24   the Court can decide this issue based on the pleadings and material subject to judicial notice, such

25   as the patents-in-suit and Fuzzysharp's previous proposed constructions.  The prior ineligibility

26   finding by this Court, endorsed by the Federal Circuit, means that most of the Court's work is

27   already done.  While Fuzzysharp was able to settle the *3D Labs* case and postpone its day of

28   reckoning, there is no reason to further defer the application of *Mayo* to these claims.  Doing so

                                                          DEFENDANT INTEL'S MOTION FOR JUDGMENT
                                                          ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

1   now will eliminate costly and unnecessary disclosures and discovery, and stop Fuzzysharp from

2   pursuing new cases based on the same claims.  Indeed, district courts around the country have not

3   hesitated to apply *Mayo* to invalidate claims like the ones at issue here.  Accordingly, Intel

4   requests that the Court dismiss Fuzzysharp's complaint with prejudice.

## II.  THE '047 AND '679 PATENTS BROADLY CLAIM MATHEMATICAL ALGORITHMS FOR SKIPPING PART OF THE "VISIBILITY CALCULATIONS" ALREADY USED IN 3D GRAPHICS

7   The Asserted Claims are drawn to nothing more than identifying the portions of known

8   computations that may be omitted, omitting them, and carrying out the remaining computations as

9   before.  As this Court and the Federal Circuit have already found with respect to the claims

10  Fuzzysharp previously asserted (including these), they are drawn to no new machine and no

11  specific application of their formula.  The patents describe the invention as "an improved method

12  for performing visibility calculations" in three-dimensional graphics.  (Ex. 1 ('047 patent), col.

13  2:23-24; Ex. 2 ('679 patent), col. 2:19-20; patent Titles.)[1]  Visibility calculations are well known:

14  they are used for "visible surface detection," which is "one of the most basic operations" in 3D

15  graphics.  (Ex. 1, col. 1:18-21; Ex. 2, col. 1:16-18.)  The calculations determine whether a 3D

16  surface can be seen from different vantage points, making it easier to represent the surface in two

17  dimensions.  (Ex. 1, col. 1:13-20.)

18  According to the patents, prior-art visibility calculations were slow because they required

19  analysis of every element of the surface in detail.  (Ex. 1, col. 1:23-40; Ex. 2, col. 1:21-38.)  The

20  claimed methods shorten the calculations by identifying part of the surface that is either always

21  visible or always invisible from a set of viewpoints and then skipping the calculations for that

22  part.  Claim 1 of the '047 patent is representative:

---

[1] Exhibits are attached to the accompanying Declaration of James F. Valentine.

| '047 patent, Claim 1 |
|---|
| **_Preamble:_**<br><br>A method of **reducing** **the visibility related computations in 3-D computer graphics**, the visibility related computations being performed on 3-D surfaces or their sub-elements, or a selected set of both, the method comprising: |
| **_Method steps:_**<br><br>**identifying** grid cells which arc under or related to the projections or extents of projections associated with at least one of said 3-D surfaces or their sub-elements;<br><br>**comparing data** associated with said at least one of 3-D surfaces or their sub-elements with **stored data** associated with the grid cells;<br><br>**determining** which of said at least one of 3-D surfaces or their sub-elements is always invisible or always visible to a viewpoint or a group of viewpoints **by projection based computations prior to a visibility computation**; and<br><br>**ignoring** said determined at least one of the 3-D surfaces or their sub-elements **during said visibility computation.** |

All the challenged claims have the same format as claim 1: a preamble that states that the method is for **(1) "reducing" (2) "the visibility related computations"** or **"the visibility calculations"** (or a variant) **(3) in a certain field of use** (such as "3-D computer graphics"), followed by method steps to perform the reduction. The method steps have three components: **(4) mathematical manipulations of data**, such as "identifying," "comparing," or "determining," **(5) a mathematical reducing step**—"ignoring" or "exempting" or "skipping" data or calculations, and **(6) an indication of where these steps fit into the visibility computations**. Finally, there are a few references to **(7) generic computing structures (e.g., "data," a "record," or a "computer")**.[2]

---

[2] To make it easier for the reader to identify the different types of claim components, we have used **red**, **blue** or **purple** for the mathematical limitations (**red for the reducing step**, **blue for the visibility computations the method reduces**, and **purple for the other math steps**), along with **green for the field of use recitation**, and **gold for generic computer elements**.

DEFENDANT INTEL'S MOTION FOR JUDGMENT
ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

Boiling the claim down to simple terms, it describes the following procedure:

> **Before carrying out visibility-related computations**,
>
> **identify at least one part of a surface in a 3-dimensional scene that is always visible from a given set of vantage points or always invisible**,[3]
>
> and then **ignore that part of the surface**
>
> **during the visibility computations**.

The abstract character of the method is plain.  The claim covers "computations" done by "identifying" and "comparing" "data" representing geometric forms such as "grid cells" and "projections" of "3-D surfaces."  Neither the claim nor the specification recites any physical instantiation of these geometric concepts.  On the contrary, the patent makes clear that they are mathematical entities.  For example, the method "determin[es]" which part of a surface is always invisible or always visible from a claimed "viewpoint" yet the patent teaches that the viewer "is an abstract and dimensionless observer."  (Ex. 1, col. 4:14-17; Ex. 2, col. 4:44-37.)  In the preferred embodiment "for calculating three dimensional *computer* graphic images," the specification teaches that "[t]he spatial position, time and the optical properties described in this embodiment can be replaced by other physical *or abstract* variables if the replacement does not affect *the mathematical relationship of entities* in the graphic image."  (Ex. 1, col. 3:64-65, 4:6-11) (emphasis added); Ex. 1, col. 18:46-48; Ex. 2, col. 19:5-7.)  Thus, any equations having the same "mathematical relationship of entities" fall within the invention regardless of the physical properties or variables to which they are applied.[4]

---

[3] The '679 claims additionally require identifying the surfaces that are neither always visible nor always invisible and maintaining a record of these remaining surfaces.

[4] Fuzzysharp's proposed constructions in previous cases are to the same effect.  For example, Fuzzysharp defined the claimed "grid cells," in relevant part, as "an elementary closed region on a mathematical plane," and "projection based computations" as, in relevant part, "mathematical operations."  Ex. 3, Ex. A, at 2, 3.

### III.   THIS COURT PREVIOUSLY HELD THE CLAIMS PATENT-INELIGIBLE, THE FEDERAL CIRCUIT AGREED, AND ALL POLICY CONSIDERATIONS SUPPORT COMPLETING THE SECTION 101 ANALYSIS OF THE CLAIMS

When this Court heard a previous challenge to the patentability of the subject matter of these patents, it held that claims 1 and 12 of the '047 patent and claims 1, 4, and 5 of the '679 patent (the only claims asserted) were unpatentably abstract.  It reached this conclusion based on the "machine or transformation" test the Federal Circuit had adopted in *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (*en banc*), *aff'd on other grounds sub nom. Bilski v. Kappos*, 130 S. Ct. 3218 (2010), *Fuzzysharp Techs., Inc. v. 3D Labs, Inc.*, 2009 WL 4899215, at *5 (N.D. Cal. Dec. 11, 2009).  The machine-or-transformation test requires a claimed process to be "(1) … tied to *a particular machine* or apparatus, or (2) … transform[ ] a particular article into a different state or thing."  *Id.* at *3.  Fuzzysharp conceded that the claims involved no physical transformation and instead contended that they recited a machine.  *Id.* at *4.  But the test requires more than "a general[ ] reference to 'a' computer."  *Id.*  The claim must contain elements tying the invention "to a particular machine."  *Id.* at 3.  Failing this standard signifies that a claim is not "tailored narrowly enough to encompass only a particular application of a fundamental principle rather than to pre-empt the principle itself."  *Id.* (quoting *Bilski*, 545 F.3d at 954 (Fed. Cir. 2008)).

This Court found it decisive that the claimed sequence of "'identifying,' 'comparing,' 'determining,' and 'ignoring' data" "may be" performed on a computer but does not require "any *particular* computer."  *Id.* at *4 (citing *Dealertrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1155-56 (C.D. Cal. 2009) (holding claim ineligible where it did not specify "precisely how the computer hardware and database are 'specially programmed,'" nor "the claimed central processor"), *aff'd as to this holding*, 674 F.3d 1315, 1331-32 (Fed. Cir. 2012)).  Nor did such elements as a "method of reducing the [ ]visibility related computations in 3-D graphics," "computer storage," "using a data structure in a computer," and "projecting 3D images 'on a computer screen'" limit the claims "to any *particular* machine."  *3D Labs*, 2009 WL 4899215 at *4, *5.  The computer did not "impose any meaningful limit on the claim scope" because it merely "serve[d] to perform the computation."  *Id.* at *5 n.3.  As a result, the Court held, "these claims are drawn to mathematical calculations and algorithms."  *Id.* at *5.

DEFENDANT INTEL'S MOTION FOR JUDGMENT ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

1    On appeal, the Federal Circuit declared that this Court "properly held that all of the

2    asserted claims fail the machine-or-transformation test" and specifically "agree[d] with the

3    [C]ourt's analysis of that issue." *3D Labs*, 447 Fed. Appx. at 184.  It echoed this Court's

4    conclusion that "[t]he recitation of computer functions in the claim … [did] not confine the

5    preemptive effect of the claim." *Id.* at 185.  Nevertheless, because of the Supreme Court's

6    subsequent announcement in *Bilski* that the machine-or-transformation test was no longer the sole

7    test of patent-eligibility, the Federal Circuit vacated and remanded for this Court to apply *Bilski*

8    and other recent precedents to Fuzzysharp's claims.  *Id.* at 186.  Those authorities and the

9    Supreme Court's more recent decision in *Mayo* do not alter the finding of ineligibility, indeed

10   they confirm it.  The *3D Labs* case settled, but this Court may proceed where the Federal Circuit

11   left off and complete the patentable subject-matter inquiry as to the '047 and '679 claims.

12   The Court may decide the issue on the pleadings because patent-eligibility is an issue of

13   law for the Court and all relevant facts either appear on the face of the pleadings or are subject to

14   judicial notice.  Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for

15   judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."

16   Fed. R. Civ. P. 12(c).  Because a motion for judgment on the pleadings is "functionally identical"

17   to a motion to dismiss, the standard on a Rule 12(c) motion is essentially the same as on a Rule

18   12(b)(6) motion.  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

19   Under that standard, the complaint must allege sufficient facts to support a cognizable legal

20   theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

21   "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the

22   moving party is entitled to judgment as a matter of law."  *Stanley v. Trustees of Cal. State Univ.*,

23   433 F.3d 1129, 1133 (9th Cir. 2006).

24   Whether the claims satisfy 35 U.S.C. § 101's criteria for patent-eligible subject matter is a

25   question of law for the Court.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

26   Here, the only material outside the pleadings the Court need consider are the patents-in-suit,

27   Fuzzysharp's claim construction proposals in the *3D Labs* case, and certain general technological

28   terms, of which it may take judicial notice.  *See Openwave Sys., Inc. v. Myriad France S.A.S.*,

DEFENDANT INTEL'S MOTION FOR JUDGMENT
ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

1   No. 10-cv-2805, 2011 WL 1832999 at *4 (N.D. Cal., May 13, 2011) (on summary judgment

2   motion, taking judicial notice of patents as "matters of public record"); *Eakin Enters., Inc. v.*

3   *Specialty Sales LLC*, No. 11-cv-2008, 2012 WL 2445154 (E.D. Cal., Jun. 26, 2012) (court may

4   take judicial notice of its own records from other cases and may consider them in ruling on a Rule

5   12(b)(6) motion) (citing *Intri–Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th

6   Cir. 2007)); *see also Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 993 (N.D. Cal.

7   2007) (taking judicial notice of claim construction ruling from a prior case); *Io Group, Inc. v.*

8   *Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1145 n.8 (N.D. Cal. 2008) (taking judicial notice of

9   Wikipedia definition of "IP address" as "not a matter that is subject to reasonable dispute.").

10          As the Federal Circuit recognized in the *3DLabs* case, it is appropriate to accept

11  Fuzzysharp's constructions for purposes of the Section 101 analysis.  447 Fed. Appx. at 184

12  (noting that this Court used agreed constructions and, for disputed terms, Fuzzysharp's

13  constructions); *Bancorp Servs. LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266,

14  1273 (Fed. Cir. 2012) ("claim construction is not an inviolable prerequisite to a validity

15  determination under section 101").  Determining subject-matter eligibility on the pleadings is also

16  a common and accepted practice.  *See Cardpool, Inc. v. Plastic Jungle, Inc.*, No. 12-cv-4182,

17  2013 WL 245026, *1-*3 (N.D. Cal. Jan. 22, 2013) (granting motion to dismiss under Rule

18  12(b)(6) for lack of statutory subject matter under *Mayo*, without waiting for claim construction);

19  *OIP Techs., Inc. v. Amazon.com, Inc.*, No. 12-cv-1233, 2012 WL 3985118, *5, 12, 16-20 (N.D.

20  Cal. Sept. 11, 2012) (same); *CyberFone Sys., LLC v. Cellco P'ship*, No. 11-cv-827, 829, 831,

21  2012 WL 3528115, at *4, 5-6 (D. Del. Aug. 16, 2012) (same); *Glory Licensing LLC v. Toys "R"*

22  *Us, Inc.*, No. 09-cv-4252, 2011 WL 1870591, *1-4 (D.N.J. May 16, 2011) (same, pre-*Mayo*).

23          Intel particularly urges the Court to decide the issue now in light of Fuzzysharp's

24  longstanding practice of filing cases and quickly settling them to preserve its patents for the next

25  target.  As far as Intel can determine, Fuzzysharp is a non-practicing entity that, on eight previous

26  occasions, has filed actions in this Court and settled before claim construction could occur, with

27

28

-8-

each case lasting an average of 9 months from filing to stipulated dismissal.[5]  Each action was

filed on or shortly after settlement of the prior suit, presumably to foreclose the possibility of a

joint defense.  The Federal Circuit has recognized this as a pattern in litigation that intentionally

exploits the high cost of defending patent suits.  *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d

1314, 1327 (Fed. Cir. 2011) (bad faith supporting sanctions shown by multitude of lawsuits

settled quickly for settlement offers far below the cost of defense to "ensure[] that [plaintiff's]

baseless infringement allegations remained unexposed"); *Ohio Willow Wood Co. v. Thermo-Ply,

Inc.*, 629 F.3d 1374, 1376-77 (Fed. Cir. 2011) ("the costs of patent litigation are enormous with

an average patent case costing upwards of $3 million for each side").  Indeed, in response to a

strategy of "trying to extract an early settlement from as many defendants as possible," the

Federal Circuit recently approved a "creative procedure designed to streamline the case" by

holding an early *Markman* hearing to construe three terms that would be case-dispositive.

*Parallel Networks LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 965 (Fed. Cir. 2013).

Here, Intel seeks no departure from normal procedure.  It asks only that the Court decide

this properly filed motion on the pleadings.  The timing of the *Bilski* decision was fortuitous for

Fuzzysharp — it prompted a remand that enabled Fuzzysharp to settle and avoid an ultimate

determination of patent eligibility in the only case that proceeded far enough for a court to subject

its claims to scrutiny.  As this Court and the Federal Circuit have already laid the groundwork in

*3D Labs*, there is no reason not to perform the last step of the analysis.  Completing the

application of Section 101 to Fuzzysharp's patents in the context of this motion on the pleadings

---

[5] This average duration omits the *3D Labs* case, which went up on appeal.  Notably, however, *3D Labs* also did not produce a claim construction order.  The other cases were against Hewlett Packard Co. (No. 01-cv-4915, filed Dec. 14, 2001, dismissed Oct. 22, 2002), Silicon Graphics, Inc. (No. 03-cv-4404, filed Sept. 30, 2003, dismissed June 2, 2004), I-0 Data Device USA, Inc. (No. 04-cv-2640, filed June 30, 2004, dismissed Jan. 10, 2005), ATI Techs., Inc. (No. 05-cv-1318, filed March 31, 2005, dismissed July 25, 2006), S3 Graphics Co., Ltd. (No. 07-cv-2262, filed Apr. 25, 2007, dismissed Dec. 18, 2007), Sun Microsystems, Inc. (No. 08-cv-4284, filed Sept. 11, 2008, dismissed May 27, 2009), and Nvidia Corp. (No. 10-cv-1844, filed April 30, 2010, dismissed Nov. 4, 2010).  Moreover, Fuzzysharp has filed additional suits in this Court since suing Intel, abandoning its previous strategy of avoiding overlapping litigation.  Presumably this is because the patents in suit have expired, and its damages window is closing.

will likely save judicial and party resources that would otherwise be spent on litigating invalid

claims in this case and the other new cases Fuzzysharp has recently filed in this Court.

### IV. THE CLAIMS REMAIN PATENT-INELIGIBLE UNDER THE STANDARDS THE SUPREME COURT ANNOUNCED IN *BILSKI* AND *MAYO*

#### A. *Mayo* Holds that a Claim Is Not Patentable If It Merely Limits an Abstract Idea to a Field of Use or Merely Adds Conventional Post-Solution Activity

The fact that the claims have already failed the "machine-or-transformation" test strongly

suggests they "pre-empt [a] principle" and are not statutory subject matter. *In re Bilski*, 545 F.3d

at 954; *see 3D Labs*, 447 Fed. Appx. at 185 (recited computer functions "do[] not confine the

preemptive effect of the claim"). In its *Bilski* decision, the Supreme Court, far from discarding

the machine-or-transformation test, declared it "a useful and important clue, an investigative tool,

for determining whether some claimed inventions are processes under section 101," albeit not the

"sole test." 130 S. Ct. at 3227. Justice Stevens and three other Justices noted in a concurrence

that "the entire Court agrees that … the machine-or-transformation test is reliable in most cases."

*Id.* at 3232. The Supreme Court supplemented the machine-or-transformation test by reviewing

its own precedents involving computer-implemented claims, but its analysis confirms the Federal

Circuit's conclusion under that test that the claims are not patent-eligible.

*Bilski* reiterated the long-recognized postulate that "laws of nature, physical phenomena,

and abstract ideas" are "part of the storehouse of knowledge of all men … free to all men and

reserved exclusively to none." 130 S. Ct. at 3225 (citations omitted). Although the Court did not

provide an explicit definition of abstractness, it cautioned that the "prohibition against patenting

abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a

particular technological environment' or adding 'insignificant postsolution activity.'" *Id.* at 3230

(quoting *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)). By contrast, it observed, "'an

*application* of a law of nature or mathematical formula to a known structure or process'" may be

entitled to a patent, but only if the claim as a whole is "not 'an attempt to patent a mathematical

formula.'" *Id.* at 3230 (quoting *Diehr*, 450 U.S. at 187).

1    In its subsequent, and unanimous, decision in *Mayo*, the Supreme Court reinforced these

2    principles and announced standards for lower courts to apply. The Court declared that a claim

3    "must do more than simply state" an abstract idea and an instruction to "apply it" in a field of use.

4    132 S. Ct. at 1294, 1301.[6] That is because such claims "too broadly preempt the use of a natural

5    law" and "foreclose more future invention than the underlying discovery could reasonably

6    justify." *Id. Mayo* illustrated the point by elaborating on *Gottschalk v. Benson*, 409 U.S. 63

7    (1972), where the claims were directed to "a method of programming a general-purpose digital

8    computer to convert signals from binary-coded decimal form into pure binary form." *Id*. at 65.

9    Although the claims recited seemingly specific computing components, such as a "reentrant shift

10   register," *id.* at 73-74, the Court concluded they would cover any use of the method in a

11   computer. *Id.* at 64 (reaffirmed in *Mayo*, 132 U.S. at 1301). Because the formula had "no

12   substantial application except in connection with a digital computer" the claims would encompass

13   all applications of the algorithm and effectively preempt it. *Mayo*, 132 S. Ct. at 1301 (citing

14   *Benson*, 409 U.S. at 71). In *Mayo*, the Court recognized that a claim need not cover *all* potential

15   uses to be ineligible, but only "*disproportionately* t[ie] up the use of the underlying abstract ideas

16   or natural laws, inhibiting their use in the making of further discoveries." 132 S. Ct. at 1294

17   (emphasis added). Even restriction to a single field of use cannot make an abstract idea

18   patentable. *Id.* at 1301. The key is that a claim must do more than just state a technological

19   context or a use: it must "add *enough*" to the law of nature or abstract idea to limit it to a patent-

20   eligible application. *Id.* at 1297.

21   *Mayo* also articulated a second proposition to guide patent-eligibility analysis: a claim

22   must apply the abstract idea in a way that reflects an "inventive concept." The Supreme Court

23   illustrated this proposition by distinguishing its decisions in *Parker v. Flook*, *supra*, and *Diamond*

24   *v. Diehr, supra*. In *Flook*, the claimed method used a computer to calculate alarm-limit values to

25   signal dangers in operating a catalytic converter, but the process did "nothing other than

26

27   ――――――――――――――――
     [6] *Mayo* involved the parallel "law of nature" exception to patent-eligibility, but the
28   Supreme Court treats "laws of nature, natural phenomena, [and] abstract ideas," including
     mathematical algorithms, interchangeably. 132 S. Ct at 1293.

'provid[e] an unpatentable formula for computing [the] updated alarm limit." *Mayo*, 132 S. Ct. at 1299; (quoting *Flook*, 437 U.S. at 586) (internal quotations and brackets omitted).  All the other steps—the chemical processes involved in catalytic conversion, the monitoring of chemical process variables, the use of alarm limits to signal danger, and the adjusting of those limits through the use of computers for "automatic monitoring-alarming"—were "'well known.'" *Id.* at 1299 (quoting *Flook*, 437 U.S. at 594).  Thus, "putting the [abstract] formula to the side, there was no 'inventive concept' in the claimed application of the formula." *Id.*  In *Diehr*, by contrast, the "other steps" added something "that transformed the process into an inventive application of the formula." *Mayo*, 132 S Ct. at 1299 (observing that claim incorporating the computer solution of the well-known Arrhenius equation in a rubber-curing process was patentable because the other steps, and the combination of them, were not "obvious, already in use, or purely conventional").

*Mayo* thus teaches that "purely 'conventional or obvious' activity" after the solution of a mathematical formula is also not a specific application that "'can transform an unpatentable principle into a patentable process.'" *Id.* (quoting *Flook*) (brackets omitted).  Fuzzysharp's claims fail both *Mayo* standards.

> **B.      The Claims at Issue Here Do Not Satisfy *Mayo*'s Patent-Eligibility Standards**
>
> > **1.      The Claims Are Patent-Ineligible Because They Claim an Abstract Idea and Add Only an Instruction to "Apply It" in a Field of Use**

*Mayo* confirms the Federal Circuit's conclusion under the machine-or-transformation test that the claims here lack "meaningful limits" to a specific application.  *3D Labs*, 447 Fed. Appx. at 186.  They recite only calculations, and specify at most a field of use in which their mathematical algorithms are applied.  This constitutes nothing more than an instruction to "apply the law." *Mayo*, 132 S. Ct. at 1301.  Consequently, the claims are drawn to an entire identified field of practical applications for the algorithm, rendering them improperly preemptive. *Mayo*, 132 S. Ct. at 1301.

The '047 claims have only one element that even arguably limits them to an application: the preamble's field-of-use recitation that the visibility computations are "in 3-D computer

1    graphics."  (Ex. 1, claim 1).  As noted above, this Court found that the method steps such as

2    "identifying," "comparing," "determining" and "ignoring" data "specify a sequence of

3    calculations," while the claims as a whole are "drawn to mathematical calculations and

4    algorithms."  *3D Labs*, 2009 WL 4899215 at *5.  The Federal Circuit "agree[d] with the [C]ourt's

5    analysis."  447 Fed. Appx. at 184.  Moreover, Fuzzysharp's construction confirms that the

6    "visibility related computations" the method acts on are "mathematical or algorithmic operations

7    that are used for computing the visibility of one or more surfaces."  (Ex. 3, Ex. A at 2.)

8           The claims thus reduce to:

9                  Apply a series of calculations

10                 to a set of mathematical visibility computations

11                 "in 3-D computer graphics."

12   Apart from non-limiting generic structures (e.g., "stored data"), *3D Labs*, 2009 WL 4899215, at

13   *4, 5 n.3, 447 Fed. Appx. at 185, the phrase "in 3-D computer graphics" is the only matter that

14   gives the claim any technological context at all.[7]

15          The patents teach that "in 3-D computer graphics" is not a specific application, but a

16   broad *field of use* in which the method may be applied.  The patents identify the "Field of the

17   Invention" as "computer graphics and, in particular [efficient hidden surface removal], generally

18   in 3D systems."  (Ex. 1, col. 1:11-16; Ex. 2, col. 1:8-13; Ex. 1 and 2 Abstract (the disclosed

19   method operates "in 3D graphics systems").)  The visible surface detection to which the patents

20   pertain is "one of the most basic operations in 3D graphics."  (Ex. 1, col. 1:18-21; Ex. 2, col.

21   1:16-18.)  Before discussing the purported invention, the patent "introduce[s] various terms and

22   define[s] variables used in 3D graphics."  (Ex. 1, col. 4:12-14; Ex. 2, col. 4:41-43)  In addition,

23   the cited references include articles on algorithms "for 3D-graphics" and papers presented at

24

25

26   _____

27          [7] Other variations do not differ materially:  e.g., to "reduc[e] a step of visibility
     computations in computer graphics" (Ex. 1, claims 11-27), to "reduc[e] visibility computations in
     3-D computer graphics," (Ex. 1, claims 28-64), to "process[ ] the visibility of 3-D surfaces before
28   a subsequent step of visibility computations" (Ex. 1, claims 65-68).

1    symposia "on Interactive 3D Graphics."  (Ex. 1, at pp. 2, 4, 5).  All these uses of the term "3D

2    graphics" plainly reference a field of use.[8]

3         By merely "limiting an abstract idea to one field of use," the challenged claims are

4    tantamount to saying simply, "apply the algorithm."  *Mayo*, 132 S. Ct. at 1301.  Indeed, the field-

5    of-use restriction here is even more transparent than in the claims rejected in *Mayo*.  There, the

6    natural law at issue was the correlation between the effects of specific thiopurine drug dosages on

7    a patient and given levels of blood metabolites.  The Supreme Court concluded that steps of

8    "administering" the drug and "determining" the metabolite levels were implicit in any use of the

9    law of nature by its intended audience (doctors) and so, added nothing beyond the instruction

10   "apply the law."  132 S. Ct. at 1297-98.  Here, by contrast, there is no need to look behind an

11   apparent application to discern the true nature of the claims.  There are no application steps—only

12   a series of calculations and a field-of-use statement:  "in 3D graphics."  In that respect, the claims

13   are more like *Mayo*'s archetypal exemplar of ineligible subject matter:  "a process consisting of

14   simply telling boat builders to refer to" Archimedes' principle of flotation "in order to determine

15   whether an object will float."  *Id.* at 1297.  Just as a claim saying "apply Archimedes' principle in

16   building a boat" is unpatentable, so are claims that say:  Apply an algorithm "in 3D graphics."[9]

17        Further confirming the absence of a specific application, the claims require no physical

18   output or programming result.  In every claim, the last method step recites either ignoring part of

19        [8] The '679 patent claims likewise contain only a single element limiting them to a
20   technological context—namely, that the method for reducing the visibility calculations is,
     according to the preamble, "required for the production of multi dimensional computer generated
21   images."  ('679, claims 1, 4 and 5.)  Producing three dimensional images is also not a specific
     application, but instead the objective of the entire field of 3D graphics, and thus is no more
22   limiting than the '047 patent's field-of-use statement.  (Ex. 2, col. 1:16 18 (The "basic" 3D
     graphics operation of visible surface detection is used to "generate images."); Ex. 3, Ex. B at 6
23   (Fuzzysharp's construction of "multi dimensional computer generated images" as "images
     generated by a computer conveying an impression of observing in three dimensions."); Ex. 4
24   (*IEEE Standard Glossary of Computer Graphics Terminology*, IEEE Std 610.6, at 21 (1991)),
     defining "three-dimensional graphics" in relevant part as, "[t]he presentation of data on a two-
25   dimensional display surface so that it appears to represent a three-dimensional model").

26        [9] It is of no moment that the algorithms here are narrower than Archimedes' principle.  "A
     patent upon a narrow law of nature may not inhibit future research as seriously as would a patent
27   upon Einstein's law of relativity, but the creative value of the discovery is also considerably
     smaller" and does not warrant the commensurate foreclosure of future innovation.  *Mayo*,
28   132 S. Ct. at 1303.  There is a "bright-line prohibition against patenting laws of nature,
     mathematical formulas, and the like" no matter how narrow the formulas may be.  *Id.*

1    visibility computations or completing those calculations without the unnecessary steps—nothing

2    more.[10]  Claims mandating only the reduction of calculations, with no specific output, cover any

3    application for which the calculations might be used.  These claims add even less to their abstract

4    principle than does telling doctors to use the correlation between vaccine effectiveness and

5    metabolite levels in administering the vaccine.  *See Mayo*, 132 S. Ct. at 1297.

6         Thus, just as the method of converting binary numbers in *Benson* would cover all

7    computer applications of that algorithm, the claims at issue here would cover all applications of

8    their algorithm in the field of "3D computer graphics."  The specification confirms the claims'

9    unbounded scope:  their reach is not limited even to 3D computer graphics, but includes every

10   field that uses visible surface detection, such as "radiosity calculations to compute the energy

11   interactions between surfaces," "Hidden Surface Computations" for "computer animation, flight

12   simulation or dynamic graphics," "Ray Tracing Computations,"[11] "Computer Vision,"[12] "virtual

13   reality applications," and the "processing and display of scientific data such as energy spectra

14   data."  (Ex. 1, col. 1:20-22, 15:33-41, 15:58-16:19, 16:21-59, 18:33-46, 18:46-48, 18:56-59.)

15   Even an algorithm restricted to a far narrower field of use would be unpatentable.  *Mayo*,

16   132 S. Ct. at 1301; *see Bilski*, 130 S. Ct. at 3230, 3231 (*Flook* invention not patentable even

17   _____

18        [10] None of the final steps of the Asserted Claims go beyond either skipping part of, or
19   carrying out, the visibility calculations.  In the '047 patent, claims 1-6 and 8-10 have the same
     final step of "ignoring" certain surfaces or their elements during the "visibility computation."
     The final step of claims 11-13, 15-17, 20, 21, 23-25, and 27 is, in relevant part, "skipping" at a
20   "step of visibility computations," "an occlusion relationship calculation."  For claims 46, 47, 49,
     51, 54 and 55, it is "skipping at least an occlusion relationship calculation" at "subsequent steps"
21   or "each of a subsequent step" of "visibility computations…"  For claims 57-59 and 61-64, it is
     "ignoring" invisible 3-D surfaces or sub-elements in or during "visibility computation[s]."  For
22   claims 65, 67 and 68, it is either "computing the visibility" of a geometric entity "before a
     subsequent step of visibility computations," or using the computed visibility information to
     "reduce" a computation in a "subsequent step of visibility computations."  In the '679 patent,
23   claims 1, 4 and 5 all conclude, in relevant part, with "carrying out" "occlusion or invisibility
     relationship computations."

24        [11] Ray tracing is "[a] technique for displaying a three-dimensional object with shading and
     shadows, by tracing light rays backward from the viewing position to the light source, on a two-
25   dimensional display surface."  Ex. 4 (*IEEE Standard Glossary of Computer Graphics
     Terminology*, IEEE Std 610.6, at 19 (1991)).

26        [12] "Computer vision is a field that includes methods for acquiring, processing, analyzing,
27   and understanding images and, in general, high-dimensional data from the real world in order to
     produce numerical or symbolic information, e.g., in the forms of decisions."  Ex. 5
28   (http://en.wikipedia.org/wiki/Computer_vision, retrieved on March 12, 2013).

DEFENDANT INTEL'S MOTION FOR JUDGMENT
ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

though it limited abstract principle "to the narrower domain of signaling dangers in operating a catalytic converter" in the petrochemical and oil-refining industries).

**2.      The Claims Are Also Patent-Ineligible Because They Add Only Conventional Post-Solution Activity to the Abstract Formula**

The claims are also patent-ineligible for the independent reason that they add nothing to the abstract steps beyond "'[p]ost-solution activity' that is purely 'conventional or obvious'." *Mayo*, 132 S. Ct. at 1299 (quoting *Flook*). Under *Mayo*, "putting the [abstract] formula to the side," there must be an "'inventive concept' in the claimed application of the formula." *Id.* Here, the claims simply recite determining what part of well-known visibility computations may be omitted, omitting them, and carrying out the remaining computations as before. They do not alter, or even mention, the larger process of which those computations are a part. As in *Flook*, they are drawn to a mathematical formula and merely append conventional activity, which cannot supply the "particular application" needed to impart patentability. *Mayo*, 132 S. Ct. at 1299 (citing *Flook*).

The patents leave no doubt that the purported invention is to remove a part of standard visibility calculations known in the prior art. As the specification explains, "[v]isible surface detection is one of the most basic operations in 3D graphics" for generating 3D images. (Ex. 1, col. 1:18-21, 2:25-41; Ex. 2, col. 1:16-18, 2:20-27.) But the "standard strategy" and "current techniques" for conducting visibility computations were supposedly "very slow." (Ex. 1, col. 1:23-40; Ex. 2, col. 1:21-38.) The patent purports to make them faster by computing the "surface elements obviously visible or invisible to each other," and ignoring those elements, thereby "reducing the visibility related computations." (Ex. 1, col. 1:40-43, 2:21-44; Ex. 2, col. 1:38-40, 2:18-28.)

The claims confirm that conventional visibility computations follow the method steps. Claim 1 of the '679 patent recites that the entire method is performed "prior to an occlusion or invisibility relationship computation (*known per se*) being carried out." (Ex. 2, col. 28:31 (emphasis added).) The phrase "known per se" speaks for itself, and Fuzzysharp admitted in its construction the well-known character of the computations: "a person of ordinary skill in the art

-16-                           DEFENDANT INTEL'S MOTION FOR JUDGMENT
                              ON THE PLEADINGS, CASE NO. 12-cv-4413 YGR

1   having recognized knowledge of the prior-art." (Ex. 3, Ex. A at 1.) It is thus explicit that what

2   follows the method steps are visibility computations that would be performed even if the claimed

3   method were not used. In the '047 patent, the preamble of every claim identifies the method as

4   one for "reducing" "visibility related computations." "Reducing" signifies eliminating part of an

5   existing computation, not performing a new computation. Fuzzysharp's construction of

6   "reducing" confirms this: "decreasing *the number of operations or time used* for determining

7   the visibility of one or more surfaces." (Ex. 3, Ex. A at 2 (emphasis added).) The final step of

8   every claim is to "skip" or "ignore" data before performing a visibility computation. Thus, the

9   claims merely require excluding a certain set of data, then carrying out the same prior art

10   visibility computation that would occur in any event.

11        Under *Flook*, as endorsed in *Mayo*, such claims are not patent-eligible. In *Flook*, it was

12   known to calculate an alarm limit to signal dangers in the operation of a catalytic converter, and

13   to use a computer to calculate those alarm limits. *Id.* at 594. The claimed process "provid[ed] an

14   unpatentable [mathematical] formula" for calculating the alarm limit, while altering no other steps

15   in the existing process. *Mayo*, 132 S. Ct. at 1299 (quoting *Flook*, 437 U.S. at 586). Because the

16   claims "add[ed] nothing specific … other than what is well-understood, routine, conventional

17   activity, previously engaged in by those in the field," "putting the abstract formula to the side,

18   there was no 'inventive concept' in the claimed application of the formula." *Id.* (quoting *Flook*,

19   437 U.S. at 594). Likewise here, "all the other steps or at least the combination of those steps

20   were … already in use." *Mayo*, 132 S. Ct. at 1299. It is not merely "obvious" but *required* to

21   perform the remaining steps of "basic" visibility calculations needed to produce a 3D image.

22   (Ex. 1, col. 1:18-21, 2:25-41; Ex. 2, col. 1:16-18, 2:20-27.) And nothing could be more

23   "conventional" than performing particular computations that would have occurred even without

24   the claimed method. These are exactly the sort of "token post-solution components" that "cannot

25   transform an unpatentable principle into a patentable process." *Mayo*, 132 S. Ct. at 1301, 1299,

26   (quoting *Flook*, 437 U.S. at 589, 590) (brackets omitted).

27

28

-17-

3. **Nothing in the Claims Not Previously Considered by the Federal Circuit Changes the Analysis**

It remains the law under *Mayo* that the mere recitation of a general purpose computer does not render a claim patent eligible. *Mayo*, 132 S. Ct at 1301; *Bancorp*, 687 F.3d at 1278 (citing *Benson*, 409 U.S. at 67). This Court and the Federal Circuit have already found that claims 1 and 12 of the '047 patent and claims 1, 4 and 5 of the '679 patent contain only non-limiting general purpose computer structures, rather than a "specific machine." *3D Labs*, 2009 WL 4899215, at *4, 5 n.3; 447 Fed. Appx. at 184.

None of the components mentioned in claims that were not asserted in *3D Labs* alter this conclusion. The patents describe "z-buffers" as well-known components for storage and speed, a type of "fast memory" known in the prior art to be "simple" for storing depth and projection data. (Ex. 1, col. 1:47-53.) The patents never define or discuss a "quadtree"; they merely mention that, in one embodiment, "the data structure of the computer storage is *based on* a z-buffer or a quadtree." (Ex. 1, col. 2:57-58.) (emphasis added). The claims likewise recite these elements as general types of storage: "the structure of said computer storage is *based on* a z-buffer" or "*based on* a quadtree" (Ex. 1, claims 5, 17, and 51) (emphasis added). This is no more specific than the "high density removable storage means … *such as* a compact disc" that the Federal Circuit found insufficient to show a particular machine in *Bancorp*, 687 F.3d at 1274, 1277 (emphasis added), or the "reentrant shift register" of *Benson*, a physical computer memory component. *See Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1376 (Fed. Cir. 2011) (citing *Benson*, 409 U.S. at 73-74). Three of the four Asserted Claims that recite the z-buffer or quadtree are dependent claims that add them as a storage-type limitation for generic computer storage. (Ex. 1, claims 5, 17, and 51.) The remaining Asserted Claim that calls out the z-buffer contains no other physical structures ***at all***. (Ex. 1, claim 57) Adding a computer storage step, even one that names a particular type of storage component, to an otherwise unpatentable process, does not make it patent-eligible. *Id.* at 1375-76; *see Bancorp*, 687 F.3d at 1276-77. As for "cache memory," it is claimed only as a way to "speed[ ] up" the "visibility related computations" or "accelerate[ ]"

"computer storage." (Ex. 1, claims 10, 27, 55, 63.) Using a computer to permit a solution to be achieved more quickly also cannot confer patent-eligibility. *Bancorp*, 687 F.3d at 1278.

Further, these physical components cannot save the claims from invalidity under *Mayo*, independent of the "machine-or-transformation" test. *See* 132 S. Ct. at 1303 (noting that the machine-or-transformation test cannot "trump" the "'law of nature' exclusion"). The patents describe the z-buffer as part of the background art already used for visible surface detection, while the quadtree and cache are both well-known. (Ex. 1, col. 1:47-53; Ex. 6 (a "cache" is in relevant part "[a] small portion of high-speed memory used for temporary storage of frequently-used data")[13]; Ex. 7 (a "quadtree" is a data storage structure where each node has four children).)[14] As just noted, all are claimed for their general functions of storage and computing speed. They do not alter the conclusions that the claimed process adds only a field of use or token post-solution activity to its abstract steps. *Mayo*, 132 S. Ct. at 1294, 1297, 1301; *see Benson*, 409 U.S. at 67 (finding processes ineligible that "can be carried out in existing computers long in use, no new machinery being necessary").

### C.   The Court Need Not Await Claim Construction Because the Claims Fail to Satisfy *Mayo* Even Assuming that Fuzzysharp's Constructions Are Correct

Intel expects that Fuzzysharp will urge the Court to defer a decision on this motion based on the Federal Circuit's statement that under "*Bilski* and our own more recent precedents, the patent eligibility of at least one of the asserted claims turns on questions of claim construction that the district court did not have the opportunity to address." 447 Fed. Appx. at 186. As discussed, in light of the existing findings as to these patents and Fuzzysharp's litigation history, the Court need not and should not wait. The Supreme Court's analysis in *Mayo*, which issued after the Federal Circuit's decision in *3DLabs*, is dispositive.

---

[13] *IEEE Standard Glossary of Computer Hardware Terminology*, IEEE Std. 610.10-1994, at 13.

[14] Paul E. Black, "quadtree" and "tree," in *Dictionary of Algorithms and Data Structures* [online], Paul E. Black, ed., U.S. National Institute of Standards and Technology. 16 November 2009. (accessed at http://xlinux.nist.gov/dads/HTML/quadtree.html and http://xlinux.nist.gov/dads/HTML/tree.html on March 12, 2013) (noting "original" definition based on 1998 article, [GG98] Volker Gaede and Oliver Günther, Multidimensional Access Methods, ACM Computing Surveys, 30(2):170-231, June 1998.)

1   Courts facing patentable subject-matter issues since *Mayo* have not hesitated to employ its

2   standards to hold computer-aided claims unpatentable.  For example, this Court recently relied on

3   *Mayo* to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6), finding claims on a

4   computer-implemented gift-card redemption system ineligible.  *Cardpool*, 2013 WL 245026.  In

5   its analysis, the Court invoked both the "inventive concept" standard of *Mayo* and the rule that a

6   claim cannot merely state an abstract idea and simply add a requirement to "apply it."  *Id.* at

7   *1-*2 (citing *Mayo*, 132 S. Ct. at 1294).  The Court rejected the patentee's suggestion that it

8   should wait for the "flux" in Section 101 jurisprudence to settle before deciding the issue, because

9   the "outcome of *CLS Bank* [a Section 101 case pending before the *en banc* Federal Circuit]

10  cannot, of course, change the Supreme Court's reasoning and holdings in *Mayo* on which this

11  order relies."  *Id.* at *3; *see Bancorp*, 687 F.3d at 1279 (rejecting, under *Mayo*, claims to a method

12  of managing life insurance policies).

13      Similarly, the Federal Circuit's suggestion that claim construction was necessary under

14  the law as it stood in November, 2011 should not deter the Court from applying clear, controlling

15  Supreme Court precedent handed down in 2012.  *See OIP*, 2012 WL 3985118 at *16-*20

16  (applying *Mayo* standards to invalidate claims); *CyberFone*, 2012 WL 3528115, at *5-*6 (same);

17  *Wildtangent, Inc. v. Ultramercial*, LLC, 657 F. 3d 1323 (Fed. Cir. 2011), *cert. denied,* 12 S. Ct.

18  2431 (U.S. May 21, 2012), (vacating and remanding, in light of *Mayo*, decision upholding

19  computer-implemented claims in *Ultramercial, LLC v. Hulu, LLC*).

20  **V.     CONCLUSION**

21      For the foregoing reasons, Intel respectfully requests that the Court grant it judgment on

22  the pleadings pursuant to Fed. R. Civ. P. 12(c), dismissing this action with prejudice on the

23  ground that the Asserted Claims are drawn to ineligible subject matter under 35 U.S.C. § 101.

24  Dated:  March 15, 2013          By:  _____*/s/ Kenneth J. Halpern*_____
                                              Kenneth J. Halpern
25

26                                        Attorneys for Defendant and
                                          Counterclaim-Plaintiff
27                                        INTEL CORPORATION

28

1

## **CERTIFICATE OF SERVICE**

2       I certify that, on March 15, 2013, I electronically filed the foregoing with the Clerk of the

3  United States Court for the Northern District of California by using the CM/ECF system.

4

5
                             */s/ Kenneth J. Halpern*
                             Kenneth J. Halpern

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28